PR 13-0070

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2014 MT 88

_____

IN THE MATTER OF SOLOMON
NEUHARDT,

an Attorney at Law,

      Respondent.

O P I N I O N
a n d
O R D E R   O F
D I S C I P L I N E

_____

¶1    On January 25, 2013, the Office of Disciplinary Counsel (ODC) filed a formal disciplinary complaint under this cause number against Montana attorney Solomon Neuhardt. The complaint involves Neuhardt's concurrent representation of both Tommy Vasquez and Vasquez's then-wife Adrian Christenson during a federal investigation of methamphetamine distribution in the Billings, Montana, area. The disciplinary complaint and all other documents filed in this matter may be reviewed by any interested persons in the office of the Clerk of this Court.

¶2    ODC alleged violations of Rules 1.7, 1.9, 8.4(c), 8.4(d), and 8.1(a) of the Montana Rules of Professional Conduct (MRPC), arising out of Neuhardt's joint representation of Vasquez and Christenson. The Commission on Practice held a hearing on the complaint on July 17, 2013, and on October 17, 2013, at which hearing Neuhardt was present with counsel and testimony was presented. On December 5, 2013, the Commission submitted to this Court its findings of fact, conclusions of law, and recommendation for discipline.

¶3      Both parties have filed objections to the Commission's decision.  We restate the following issues for review:

> *1. Was the testimony of ODC witness Bryan Norcross properly stricken from the record?*
>
> *2. Did ODC prove by clear and convincing evidence that Neuhardt violated Rule 1.7, MRPC?*
>
> *3. Did ODC prove by clear and convincing evidence that Neuhardt violated Rule 1.9, MRPC?*
>
> *4. What is the appropriate discipline for the established violations?*

## BACKGROUND

¶4      At the hearing before the Commission on Practice, ODC called as a witness Yellowstone County Deputy Sheriff Frank Fritz (Fritz), whose testimony established the following.  On the morning of June 22, 2007, in Billings, Neuhardt accompanied his client, Adrian Christenson (Christenson), to a law enforcement interview conducted by members of a joint drug and gang task force called Big Sky Safe Streets Task Force (Task Force).  The Task Force included Fritz and comprised local, state, and federal law enforcement agents.  The target of the investigation was Tommy Vasquez (Vasquez).  Vasquez and Christenson, at that time, were husband and wife.  Christenson was considered a confidential witness in the investigation and her identity as a witness was protected by law enforcement because she was related to Vasquez.  Christenson received her *Miranda* warnings, signed a *Miranda* waiver, and Neuhardt signed the waiver as her attorney.  Fritz testified that Christenson told the Task Force during this interview that Vasquez was dealing methamphetamine.  Fritz additionally explained that the

2

information the Task Force received from Christenson was used to further the investigation into Vasquez's drug distribution. According to Fritz, Christenson gave the task force information that helped in the subsequent prosecution of Vasquez. Fritz indicated that Christenson had "ratted him [Vasquez] out."

¶5     Later in the evening on June 22, 2007, Neuhardt accompanied Vasquez to an interview with the Task Force. Vasquez signed a *Miranda* waiver, which Neuhardt acknowledged as Vasquez's counsel. Fritz testified that the Task Force used the information it received from Christenson to interview Vasquez. During this interview, Fritz testified that Vasquez incriminated himself in methamphetamine possession and distribution and that the information Vasquez gave furthered the investigation against Vasquez. Vasquez's information previously had been corroborated by Christenson. Neuhardt was present during both interviews as counsel for Christenson and Vasquez.

¶6     One year later, on August 11, 2008, Neuhardt accompanied Christenson to a second interview with the Task Force. Fritz testified that Christenson executed a *Miranda* waiver which Neuhardt acknowledged as her counsel. During this interview, the Task Force learned from Christenson that Vasquez was the main supplier of methamphetamine in Billings and that he possessed firearms. At the conclusion of the interview, Neuhardt advised the Task Force that he was no longer representing Vasquez.

¶7     ODC presented documentary evidence to the Commission establishing that on August 12, 2008, the day following Christenson's second interview with the Task Force, Neuhardt filed a petition on Christenson's behalf for dissolution of her marriage to Vasquez. On September 5, 2008, Neuhardt sent a letter to Vasquez's real estate agent,

3

with a copy of the dissolution petition and restraining order, indicating that Vasquez was not allowed to transfer real property.

¶8 Neuhardt did not obtain an informed waiver of any actual or potential conflict from Christenson or Vasquez in either of the interviews held on June 22, 2007, or August 11, 2008.

¶9 On September 17, 2008, an Indictment was filed in United States District Court charging Vasquez with distribution of methamphetamine and numerous firearms violations. Count I charged that in January of 2007, and continuing to present, Vasquez distributed methamphetamine. Counts II through V charged additional drug and firearms violations, alleged to have occurred on or about April 22, 2008. On May 26, 2009, a Superseding Indictment was filed adding a forfeiture count and another count charging distribution on or about September 18, 2008.

¶10 Vasquez pleaded guilty to Count II of the Superseding Indictment, which charged that on April 22, 2008, he distributed methamphetamines. At the time of Vasquez's guilty plea, he was represented by defense counsel Bryan Norcross. Vasquez received a twenty-year prison sentence, followed by six years of supervised release.

¶11 The Commission also heard testimony from Norcross. Upon objection by Neuhardt's counsel, the Commission struck Norcross's testimony that Christenson's statement to law enforcement substantially harmed and compromised Vasquez's defense.

¶12 Neuhardt acknowledged that Christenson implicated Vasquez in illegal drug dealing during her 2007 interview, but claimed that the husband and wife both had agreed to cooperate with the investigation at that time. Neuhardt pointed out in

cross-examination of Fritz that Vasquez had "rat[ted] himself out" during the 2007 interview. Neuhardt argued that the only way Vasquez was going to avoid life in prison was to cooperate and that it was in Vasquez's and Christenson's joint interests to provide full information to law enforcement during the 2007 interview. Neuhardt pointed out further that Vasquez was never convicted of any offenses described in the 2007 interview.

¶13 Neuhardt testified that Christenson's interview on August 11, 2008, was in her and Vasquez's best interests, given the earlier interviews in 2007. The Commission found that Neuhardt was evasive in his testimony and claimed to have very little recall of the events. Although ODC received Vasquez's complaint against Neuhardt on March 23, 2009, Neuhardt apparently disposed of his files, having no information that the Vasquez complaint was still under investigation.

¶14 In its findings, conclusions, and recommendations, the Commission concluded that ODC proved by clear and convincing evidence that Neuhardt violated Rule 1.7, MRPC, by engaging in a concurrent conflict of interest on June 22, 2007, when he represented both Vasquez and Christenson, despite Christenson's potential adversity to Vasquez and the significant risk that his representation of Christenson would materially prejudice his representation of Vasquez. The Commission concluded, however, that ODC did not prove by clear and convincing evidence that Neuhardt's dual representation of Vasquez and Christenson prejudiced Vasquez's defense of subsequent criminal charges or that it prejudiced either client in connection with events in 2007. The Commission further concluded that ODC failed to prove by clear and convincing evidence that Neuhardt

5

violated Rule 1.9 or Rule 8.4(d), MRPC, by engaging in a conflict of interest with his then-former client Vasquez on August 11, 2008, when he represented Christenson during the subsequent law enforcement interview. Finally, the Commission concluded that Neuhardt's less-than-candid initial response to ODC regarding Vasquez's informal complaint against him violated Rules 8.1(a) and 8.4(c), MRPC.

¶15 The Commission recommends that, as a result of these violations of the Montana Rules of Professional Conduct, Neuhardt should be publicly admonished by this Court and be suspended from the practice of law in Montana for 90 days. The Commission also recommends that Neuhardt be ordered to pay the costs of these proceedings.

## STANDARD OF REVIEW

¶16 This Court possesses "original and exclusive jurisdiction and responsibility" in all matters involving the disciplining of attorneys in Montana. *See* Introduction, Montana Rules for Lawyer Disciplinary Enforcement (MRLDE). As a result, our review of the Commission's findings of fact, conclusions of law, and recommendations is de novo. *In re Potts*, 2007 MT 81, ¶ 32, 336 Mont. 517, 158 P.3d 418. "Our duty includes weighing the evidence upon which the Commission's findings rest." *Potts*, ¶ 32. Matters of trial administration are reviewed for abuse of discretion. *Blanton v. Dep't. of Pub. HHS*, 2011 MT 110, ¶ 22, 360 Mont. 396, 255 P.3d 1229. Further, despite our duty to weigh the evidence, "we remain reluctant to reverse the decision of the Commission when its findings rest on testimonial evidence. We recognize that the Commission stands in a better position to evaluate conflicting statements after observing the character of the witnesses and their statements." *Potts*, ¶ 32.

6

**DISCUSSION**

¶17 *Issue 1: Was the testimony of ODC witness Bryan Norcross properly stricken from the record?*

¶18 Following the hearing on July 17, 2013, and prior to the second hearing on October 17, 2013, Neuhardt filed a subpoena duces tecum requesting disclosure of Norcross's file pertaining to Vasquez's representation. In responding to Neuhardt's application for the subpoena, ODC disclosed that Norcross was "[e]xpected to testify as Vasquez's subsequent counsel concerning the prejudicial effect of the law enforcement interviews in question and the subsequent procedural history of the defense." ODC's response continued:

> Thus, he is expected to lay the foundation for the conviction arising from the law enforcement investigation conducted by Yellowstone County Deputy Sheriff Frank Fritz and the drug task force. He can also address Mr. Vasquez's conflicted interview with the task force of June 2007 and its prejudicial effect on defense upon indictment.

The Commission, in its September 3, 2013 Order on Respondent's Motion for Issuance of a Subpoena Duces Tecum, required that Norcross's file be produced, except for that material constituting confidential criminal justice information and material otherwise privileged. Thereafter, on September 24, 2013, counsel for Neuhardt interviewed Norcross by telephone. Norcross had not yet been able to locate his Vasquez file. ODC's attorney was not present for the interview, but Neuhardt's counsel recorded the conversation, transcribed it, and provided a copy to ODC. During the interview, Norcross stated that without referencing the confidential presentence report, it was hard to say whether the court considered Vasquez's June 22, 2007 confession in imposing a

7

sentence. When asked about whether Neuhardt's actions had a prejudicial effect on Vasquez, Norcross stated he was unable to give an opinion.

¶19 In response to ODC's questioning of Norcross during the hearing on October 17, 2013, Neuhardt's counsel moved to dismiss the complaint on the basis that Norcross was testifying contrary to his recorded statement; that his change in opinion had not been disclosed by ODC; and that this surprise had prejudiced Neuhardt's defense. Neuhardt argued that ODC was required to disclose any change in Norcross's opinion, because he was an expert witness. The Commission found that ODC had failed to disclose to Neuhardt that Norcross's testimony would directly contradict his prior statements to Neuhardt's counsel. The Commission denied Neuhardt's motion to dismiss, but found that the appropriate sanction was to strike Norcross's testimony.

¶20 Rule 12, MRLDE, provides that "hearings in formal disciplinary proceedings shall be conducted in accordance with the Montana Rules of Civil Procedure and the Montana Rules of Evidence." The duty to supplement or correct discovery is described in M. R. Civ. P. 26(e), and generally requires that a party "who has responded to an interrogatory, request for production, or request for admission must supplement or correct its response . . . ." "Information is 'incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Wheaton v. Bradford*, 2013 MT 121, ¶ 22, 370 Mont. 93, 300 P.3d 1162 (quoting *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011); *Sender v. Mann*, 225 F.R.D. 645, 653-54 (D. Colo. 2004)).

8

¶21 The Commission's determination that Norcross's testimony should be stricken was based on the special functions and duties of a prosecutor. As the Commission observed, ODC bears the special responsibilities of a prosecutor outlined in Rule 3.8, MRPC. The Commission determined that ODC had an obligation to make timely disclosure of information it knew would have been contrary to that possessed by Neuhardt's counsel.

¶22 We observe that, prior to the hearing before the Commission, ODC had identified Norcross as a witness who would testify "concerning the prejudicial effect of the law enforcement interviews in question." Though the parties dispute whether Norcross was a fact witness or an expert witness, that distinction is not dispositive. The Commission reviewed the transcripts of Norcross's interview with Neuhardt's counsel, heard his subsequent testimony, and determined that ODC improperly withheld new information from Neuhardt's counsel. We conclude that, as a matter of trial administration, the Commission was within its discretion to strike Norcross's testimony.

¶23 *Issue 2: Did Neuhardt violate Rule 1.7, MRPC, by engaging in a concurrent conflict of interest?*

¶24 The Commission concluded that Neuhardt violated Rule 1.7, MRPC, by engaging in dual representation of Vasquez and Christenson, but that ODC failed to prove by clear and convincing evidence that Neuhardt's dual representation "prejudiced Vasquez'[s] defense of the subsequent criminal charges or prejudiced either client in connection with the events in 2007." Rule 1.7(a) states in pertinent part, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent

9

conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]" A lawyer may be able to represent clients with a concurrent conflict of interests under specified circumstances, among which is that "each affected client give informed consent, confirmed in writing." Rule 1.7(b)(4), MRPC.

¶25 While Montana's jurisprudence defining the parameters of dual representation is sparse, the United States Supreme Court has held:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Holloway v. Arkansas*, 435 U.S. 475, 489-90, 98 S. Ct. 1173, 1181 (1978). Thus, waivers by all affected defendants may not necessarily cure the problems created by multiple representations, and no "such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice." *Wheat v. United States*, 486 U.S. 153, 160, 108 S. Ct. 1692, 1697-98 (1988). Accordingly, courts have an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear to be fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698. Most importantly, "[n]ot only the interest of a criminal defendant *but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation*." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698 (emphasis added). Indeed, recognition of the problems inherent in joint representation has prompted courts in criminal proceedings to conduct an inquiry

10

regarding potential conflicts and the defendant's intent to forego independent representation. *See e.g. United States v. Solomon*, 856 F.2d 1572 (11th Cir. 1988).

¶26 This proceeding concerns not a Sixth Amendment violation but evaluation of compliance with the Rules of Professional Conduct. Before the Commission, Detective Fritz testified that Neuhardt represented Christenson when she gave incriminating information against Vasquez, who also was Neuhardt's client. Simply stated, Christenson was a materially adverse witness against Vasquez. Fritz's unrefuted testimony was that Christenson had "ratted out" Vasquez. Even if Vasquez also implicated himself, Neuhardt failed to appreciate the conflicting interests between husband and wife or to explain those conflicts to his clients and pursue the possibility or effectiveness of any waiver.

¶27 Based on the foregoing, the Commission correctly concluded that Neuhardt violated Rule 1.7, MRPC, whether or not "actual prejudice" to Vasquez's defense occurred as a result of Neuhardt's joint representation.

¶28 *Issue 3: Did ODC prove by clear and convincing evidence that Neuhardt violated Rule 1.9, MRPC?*

¶29 The Commission found that "[t]he 2008 charges to which Vasquez pleaded guilty were not based on the information obtained during the July 2007 interviews, but on subsequently developed information and facts." The Commission then concluded that ODC failed to prove by clear and convincing evidence that Neuhardt violated Rules 1.9 and 8.4(d), MRPC, by engaging in a conflict of interest with a former client, Vasquez, when on August 11, 2008, he represented Christenson during her law enforcement

11

interview. ODC has objected only to the Commission's conclusion that a violation of Rule 1.9, MRPC, was not established.

¶30 Rule 1.9, MRPC, sets forth a lawyer's duties to former clients. It specifies that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Here, ODC's complaint alleges that Neuhardt engaged in a conflict of interest with a former client on August 11, 2008, by representing Christenson during her subsequent law enforcement interview within the same criminal investigation despite Christenson's materially adverse interests to Neuhardt's former client, Vasquez. There is no claim that Vasquez gave his informed consent.

¶31 At the time of Christenson's August 11, 2008 interview with the Task Force, Vasquez was Neuhardt's former client. As explained above, Fritz's testimony established that Christenson's statement to law enforcement during her August 11, 2008 interview was materially adverse to Vasquez's interests. Christenson's statement provided further information and assistance to the Task Force in its investigation of Vasquez. During this subsequent interview, the Task Force learned from Christenson that Vasquez was the main supplier of methamphetamine in the Billings area and that he possessed firearms.

¶32 Moreover, the Commission's conclusion that there was not clear and convincing evidence that Neuhardt violated Rule 1.9, MRPC, cannot be reconciled with its

determination that he violated Rule 1.7, MRPC, when he represented a client with a concurrent conflict of interest. As noted, a concurrent conflict of interest exists if the representation of one client will be directly adverse to another client, or there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client or a former client. Rule 1.7(a)(1-2), MRPC. The Commission found that Neuhardt violated Rule 1.7 by representing both Vasquez and Christenson in the June 2007 Task Force interviews, despite the potential adversity between clients and the significant risk that his representation of Christenson would materially limit his responsibilities to Vasquez.

¶33 By August 2008, Christenson was preparing to seek dissolution of her marriage to Vasquez and gave another interview in which she implicated him in drug transactions. Given the conflict of interest found to have existed pursuant to Rule 1.7, MRPC, we conclude that clear and convincing evidence also demonstrated a violation of Rule 1.9, MRPC. Although Neuhardt argues that there was no real evidence as to what was said during the interview, he does not dispute that by August 2008, Christenson's and Vasquez's interests were adverse and that he represented Christenson in the interview—a substantially related matter to the 2007 interview—without obtaining Vasquez's waiver after informed consent.

¶34 We conclude that Neuhardt violated Rule 1.9, MRPC, on August 11, 2008, when he represented Christenson, whose position was materially adverse to Neuhardt's former client, Vasquez.

¶35    *Issue 4: What is the appropriate discipline for the established violations?*

¶36    The Commission recommends that the Court impose, as discipline for Neuhardt's violations, a public admonition by the Court, suspension from the practice of law for a period of 90 days, and that Neuhardt be ordered to pay costs of the proceedings. The recommendation came after a balancing by the Commission of several aggravating and mitigating factors. The Commission considered the delay in ODC's prosecution of Vasquez as mitigating against a harsher sanction.

¶37    We agree that the lengthy delay in this proceeding is troublesome and caused a hardship to Neuhardt in his ability to prepare a defense to the charges. It also resulted in a delayed final proceeding that post-dated by many years the conduct for which he is to be disciplined. Neuhardt already has been disciplined for other conduct that preceded the Vasquez matter. The Commission appropriately acknowledged the lengthy delay as a mitigating factor in Neuhardt's favor.

¶38    After a thorough review of the record of the Commission's proceedings, we generally agree with the Commission's recommendation. Even if the conflict substantiated by the evidence would not, standing alone and with no finding of prejudice, justify a lengthy suspension, Neuhardt has not addressed in substance the Commission's finding that he violated Rules 8.1(a) and 8.4(c), MRPC, in his response to ODC regarding the complaint, except to cite the Latin phrase meaning, "the law does not care for, or take notice of, very small or trifling matters." The Commission's finding of clear and convincing evidence suggests more than a trifling matter. The rules governing candor and maintaining the integrity of the legal profession impose serious obligations critical to

14

the operation of a self-governing profession. *See* Preamble, § (12), MRPC. The record before the Court evidences a troubling lack of respect for the disciplinary process. Too, as noted, this is not the first matter in which Neuhardt has been disciplined in recent years. The Court is concerned by Neuhardt's display, even at the hearing before the Commission, of an inability to appreciate the existence of even a potential for conflict in his representation of both Christenson and Vasquez, in what suggests a pattern of his lack of understanding of the rules governing a lawyer's conduct.

¶39 Finally, we observe that, although the Commission has recommended that this Court deliver a public admonition to Neuhardt, the applicable form of discipline to be administered by this Court under Rule 9, MRLDE, is a public censure.

¶40 Based upon the foregoing,

¶41 IT IS HEREBY ORDERED that, with the exceptions discussed above, the Commission on Practice's Findings of Fact, Conclusions of Law, and Recommendation are ACCEPTED and ADOPTED.

¶42 IT IS FURTHER ORDERED that Solomon Neuhardt is suspended from the practice of law in Montana for 90 days, from June 2, 2014, through August 31, 2014. Neuhardt is directed to give notice of his suspension to all clients he represents in pending matters, any co-counsel in pending matters, all opposing counsel and self-represented opposing parties in pending matters, and all courts in which he appears as counsel of record in pending matters, as required by Rule 30, MRLDE.

¶43  IT IS FURTHER ORDERED that Neuhardt shall appear before this Court in our courtroom in Helena, Montana, at 1:00 p.m. on April 29, 2014, to receive a public censure by this Court.

¶44  IT IS FURTHER ORDERED that Neuhardt shall pay the costs of these proceedings subject to the provisions of Rule 9(A)(8), MRLDE, which allow him to file objections to the statement of costs.

Dated this 1st day of April, 2014.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE

Justice Laurie McKinnon, concurring.

¶45  I agree with the Court's analysis and conclusion regarding Neuhardt's disciplinary proceeding.  I write separately to highlight the danger in what I view as the structural conflict inherent in engaging in dual representation.

¶46  In my view, rare are the situations in which actual conflicts are apparent prior to trial.  Without the wisdom of hindsight, it is difficult—if not impossible—to determine actual prejudice resulting from an attorney's dual representation.  Thus, whether or not a defendant was subject to "actual prejudice" is secondary to considering how joint representation threatens the integrity of our criminal justice system.  In the instant case, had Vasquez gone to trial, the trial court would have been confronted with a dilemma—a

16

denial of Vasquez's motion to suppress would surely lead to an ineffective assistance of counsel claim; however, granting Vasquez's suppression motion would likely result in the Government losing their case. Even more offensive, however, to our goal of obtaining just verdicts in criminal cases is the possibility that the Prosecutor offered Vasquez a lenient deal in order to avoid the consequences imposed by the conflict. A guilty plea would normally waive a subsequent collateral challenge.

¶47 While such a scenario is indeed hypothetical, I believe it is instructive in explaining our caution regarding joint representation. Additionally, the Rules of Professional Conduct exist to prevent these dilemmas. Although defendants have a Sixth Amendment right to counsel of their choice, they do not have the right to build in a structural conflict such that the integrity of the proceeding may be collaterally attacked on appeal. The necessity of proving actual prejudice to obtain reversal of a conviction based upon a Sixth Amendment violation is not required when evaluating a violation of the Rules of Professional Conduct. Indeed, recognition of a structural conflict such as present in the instant matter underlies a trial court's obligation to conduct an inquiry regarding potential conflicts and the defendant's intent to forego independent representation. *U.S. v. Garcia*, 528 F.2d 580, 587-88 (5th Cir. 1976); *U.S. v. Solomon*, 856 F.2d 1572, 1581-82 (11th Cir. 1988).

¶48 I would have included this further explanation in our Opinion. In all other respects, I concur.

/S/ LAURIE McKINNON