

FILED

03/31/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: PR 19-0017

IN THE SUPREME COURT OF THE STATE OF MONTANA

PR 19-0017

**FILED**

MAR 3 1 2020

Bowen Greenwood
Clerk of Supreme Court
State of Montana

IN THE MATTER OF TINA L. MORIN,

An Attorney at Law,

Respondent.

ORDER
OF
DISCIPLINE

On January 11, 2019, a formal disciplinary complaint was filed in this matter against Montana attorney Tina L. Morin. The disciplinary complaint may be reviewed by any interested person in the office of the Clerk of this Court.

The Commission on Practice (Commission) held a hearing on the complaint on January 9 and 10, 2020. Both the Office of Disciplinary Counsel (ODC) and Morin, who represented herself during the proceedings, presented argument and questioned witnesses.

On February 5, 2020, the Commission submitted to this Court its Findings of Fact, Conclusions of Law, and Recommendation for discipline. Morin then filed objections, and ODC filed a reply.

FACTUAL AND PROCEDURAL BACKGROUND

This complaint arose from Morin's representation of Robert and Holly Labair in their pursuit of a legal malpractice claim against attorney Steve Carey. The Labairs retained Carey to represent them in pursuing a medical malpractice claim after their infant son died. The Fourth Judicial District Court dismissed the Labairs' lawsuit as time-barred in May 2008.

In October 2008, the Labairs retained Morin to represent them in a legal malpractice claim against Carey. After the Labairs filed a complaint against Carey in District Court, he admitted he owed a duty of care to the Labairs and had breached the standard of care by

missing the statute of limitations. He maintained, however, that his breach did not cause the Labairs any injuries or damages. The District Court agreed with Carey and granted summary judgment in his favor. The Labairs, represented by Morin, successfully appealed that ruling; we held that the evidence was sufficient to withstand summary judgment. *Labair v. Carey*, 2012 MT 312, 367 Mont. 453, 291 P.3d 1160.

In the spring of 2013, Morin retained another attorney, Paul Warren, to assist her in preparing the Labairs' case for trial. Morin and Warren reached an agreement for splitting fees and costs. Warren never entered into a written agreement with the Labairs directly.

In March 2015, the District Court conducted a six-day jury trial. Warren presented the majority of the Labairs' case. Morin examined Charity Rowsey, a forensic accounting specialist who testified about the value of the Labairs' medical malpractice claim. Rowsey's testimony forms the basis of one of the counts of misconduct ODC has charged in the present matter. Morin questioned Rowsey as to whether she knew if Carey had consulted with an economic loss expert when he represented the Labairs. Rowsey responded that she understood Carey had consulted Joe Kasperick, an expert in that field. On cross-examination, Rowsey testified that the basis for her belief that Carey had contacted Kasperick was because Morin had informed her he had. The defense later put Kasperick on the stand as a rebuttal witness and Kasperick denied consulting with Carey on the case. Kasperick further testified that prior to trial, he had informed Morin that he had not done any work for Carey on this case. The jury ultimately returned a defense verdict.

Sometime after the trial, Carey, through his attorney Mikel Moore, sought and was granted sanctions against Morin for the time and expenses incurred by the defense in obtaining Kasperick's rebuttal of Rowsey's testimony.

At the disciplinary hearing, Moore testified that Rowsey's inaccurate testimony gave the jury the impression that Carey had lied when he testified that he did not reach the economic part of the Labairs' case. Morin claimed that she was not aware that Rowsey's testimony was false and she does not believe it was false. She asserted the Labairs informed her that Carey had intended to consult an economic expert when he represented them. She offered into evidence a September 15, 2015 affidavit signed by Robert Labair in which he

2

attested, in part, "That [Carey] told us he was getting a lost earning capacity expert, but he never did." Robert's affidavit also attested, "That [Carey] specifically said he was talking to an economic loss expert that he had used in the past and that was very good but super expensive." And the affidavit further attested, "That based on [Carey's] other lies about what he did and did not do (filing our complaint, getting experts) it is possible that [Carey] did not contact a lost earnings expert. That does not change the truth that [Carey] told me he did contact someone." Morin further testified that she was nonetheless surprised that Rowsey testified that she knew Carey had contacted an economic loss expert because Morin had only informed her that Carey had contacted an economic loss expert and that Morin knew from experience that Carey normally used Kasperick. She stated:

> In the moment I said, "Okay. What do you know?" And her answer was, "It is my understanding that he contacted," and then ultimately it became Joe Kasperick. And at that moment I knew that she was talking about what I had told her, but it really doesn't matter where she got her information as long as it's true information; and in this case, it was our belief and understanding that it was true, and to this day, I still believe that it was true.

At the disciplinary hearing, Robert denied he ever told Morin that Carey contacted an economic loss expert; rather, he told Morin that Carey had told the Labairs that he believed he would eventually have to do so. Robert was adamant that Carey never told him the name of the expert and that he never offered a name to Morin.

After the Labairs lost at trial, they appealed to this Court, arguing the trial court erred in instructing the jury. Morin represented the Labairs on appeal; unbeknownst to the Labairs, however, she hired a contract attorney to write the appellate briefs and she taxed this cost to the Labairs. On appeal, this Court held that the trial court erred in its instructions to the jury. It remanded the matter on the issue of damages for the Labairs' lost opportunity to settle. *Labair v. Carey*, 2016 MT 272, 385 Mont. 233, 383 P.3d 226.

In late 2017, as the case moved toward trial on the damages issue, the parties agreed to attempt settlement. The parties previously had participated in three unsuccessful mediations. Robert testified that as the date for the fourth mediation approached, the Labairs became increasingly apprehensive about Morin's ability to settle the case. He believed the

3

poor relationship Morin had created with opposing counsel had hindered negotiations: "We seemed to do a lot of fighting, a lot of arguing, and bickering back and forth, and name calling, and finger pointing. And nothing ever seemed to get resolved to go forward."

Morin's relationship with other counsel forms the basis of another charge in this disciplinary matter. ODC charged Morin with misconduct for communications with counsel that ODC characterized as abusive, unprofessional, and uncivil.

Moore agreed that the relationship between opposing counsel was contentious. He stated that Morin's personal attacks against him and his client were "completely outside my experience" as a practicing attorney. Moore testified that Morin did not merely use invective as a trial tactic, but used abusive language in her private communications as well. She called Carey a liar and insinuated he was an evil person. She also accused him of intentionally ensuring the Labairs' medical malpractice claim failed. Moore further alleged that Morin asked inappropriate questions, made inappropriate comments on the record, and engaged in "outright visceral hostility" with opposing counsel during depositions. He also testified that Morin continuously, and baselessly, filed briefs that threatened him with Rule 11 sanctions until Moore complained to Warren, who made a filing in the District Court to formally withdraw Morin's accusations. Moore alleged that Morin baselessly accused him of ethical violations, demanded that he report himself to ODC, and accused him of negligence. Moore reached a point where he would communicate with Morin only in writing. He explained that Morin's tendency to use abusive language prevented the Labairs' case from moving forward because it was impossible for him to have productive conversations with Morin.

While Morin represented the Labairs in the legal malpractice case, the Labairs also used another attorney, Cory Gangle, for unrelated business and real estate matters. Because Robert was increasingly concerned about Morin's professionalism, and specifically her behavior toward other attorneys, he began trying to engage Gangle in discussions about the malpractice case. Robert testified that Morin was often "aggressive" and engaged in bullying behavior. For example, during Robert's deposition, it was his impression that Morin behaved aggressively toward the attorney who deposed him. Robert recalled that .

4

Morin did not merely object to questions but called the other attorney names and engaged in an argument that was personal in nature. He further testified that Morin was also confrontational with Warren, her co-counsel.

In spite of Robert's entreaties, Gangle refused to comment on Morin's performance. Gangle testified he initially resisted the Labairs' requests for him to become involved in the legal malpractice case. However, he agreed to participate when he learned a mediation was imminent because he believed he could act as a buffer between Morin and the defense to help settle the case. Robert testified that Morin was adamantly opposed to Gangle's participation and she was "very aggressive" with Gangle. Gangle testified that Morin sent him "nasty" e-mails that convinced him her actions were counterproductive to the Labairs' interests.

At the disciplinary hearing, Morin conceded that she used "crude" and "crass" language in communicating with Moore, Gangle, and other attorneys involved in the Labairs' litigation. She acknowledged that the language she used in communicating with Moore was "exceedingly harsh" and "very strong." However, she alleged her use of such language was justified because she disagreed with the conduct of the other attorneys.

Morin's alleged failure to timely communicate her expenses to the Labairs and to charge unreasonable expenses to the Labairs forms the third misconduct violation charged by ODC. Prior to the mediation, Gangle learned that Morin had never provided the Labairs with an accounting of the costs they had incurred in the litigation. He advised the Labairs to obtain an up-to-date accounting from Morin because they needed that information to make an informed decision about settlement. In December 2017, Holly Labair e-mailed Morin and requested "a copy of the expenses we have currently so we know where we sit." Morin did not send an accounting and on January 23, 2018, one of the Labairs e-mailed Morin and asked for "a ball park of what [our] expenses are before this mediation." On January 25, 2018, the day before the mediation, Morin e-mailed two invoices to Holly, one for $17,950.68 and one for $17,839.68, for a total of $35,790.36.

5

On January 26, 2018, the parties convened a mediation at Gangle's office in Missoula. Both Gangle and Morin participated on behalf of the Labairs, and the parties settled the case that day.

In March 2018, Morin provided the Labairs with a disbursement statement for the settlement. The statement listed three additional cost invoices for $23,433.16, $5,337.32, and $16,477.92. Added to the two invoices that Morin provided before the settlement conference, the costs taxed to the Labairs totaled $81,038.76. The Labairs contacted Gangle about the disbursement statement. Prior to receiving the statement, they were not aware Morin was claiming any costs in addition to the $35,790.36 she had previously invoiced. Furthermore, Morin had never provided receipts for any of the items invoiced and there were several large expenditures of which the Labairs had been previously unaware, including out-of-state travel and use of a contract attorney to write an appellate brief.

At the disciplinary hearing, Morin acknowledged she had not provided the Labairs with an accounting of costs prior to sending them two invoices on January 25, 2018, and an additional three invoices in March 2018. Although Robert denied that Morin communicated any cost amounts to the Labairs prior to the two invoices on January 25, 2018, Morin claimed that shortly before then, she met with the Labairs and orally informed them that their costs were approximately $80,000. She further claimed that she did not provide the two invoices on January 25 for the purpose of informing the Labairs about the amount of their costs, but because the Labairs wanted to compare those specific costs against Warren's cost invoices to ensure that they were not double-billed for some costs.

After the Labairs received the disbursement statement, Gangle entered a limited appearance in the District Court on their behalf to challenge the $45,248.40 in additional costs Morin had claimed. Morin sent Gangle e-mails and letters that he considered "extremely vile." Among those communications was a letter Morin sent on May 17, 2018, in which she objected to Gangle's involvement with the Labairs' challenge of her costs. She stated, in part:

Your latest filing before Judge McLean is a violation of our professional rule

prohibiting leveraging, harassment and attempts to unduly influence the Court. It reeks of sexism. Your belief that you have a right to bully a female attorney looks a lot like Donald Trump's belief that he can sexually assault us and we will like it. You do not have the balls to do this to a male attorney and your attempt to shake me down is pure cowardice shown in the fact that you did not go get your own good case and work it yourself. You did not have the balls to spend ten years and over $100,000 in costs or to go up against the good old boys' club.

After an evidentiary hearing in May 2018, the District Court awarded Morin the previously invoiced costs of $35,790.36 and disallowed the additional $45,248.40 in costs she had invoiced with the disbursement statement. Morin appealed this decision, and this Court affirmed. *Labair v. Carey*, 2019 MT 66N, 395 Mont. 524, 436 P.3d 722.

## DISCIPLINARY PROCEEDINGS

On January 11, 2019, ODC filed its Complaint with the Commission, charging Morin with three counts of professional misconduct for her actions while representing the Labairs. It alleged Morin violated: Rules 3.3(a), 3.4(b), 3.4(c), 8.4(c), and 8.4(d) of the Montana Rules of Professional Conduct by eliciting false testimony from Rowsey during the jury trial; Rules 1.4 and 1.5(a) by failing to timely communicate her expenses to the Labairs and for charging unreasonable expenses to the Labairs; and Rules 1.1, 1.3, and 3.1(a) for engaging in abusive, unprofessional, and uncivil conduct toward other counsel during her representation of the Labairs.

On September 10, 2019, Morin filed a motion to recuse Ward Taleff, the Commission Chairman, from this matter.[1] She alleged Taleff was biased against her because in an earlier disciplinary matter, she received a private admonition from the Commission that Taleff wrongly reported as a public admonition to this Court and to the Federal District Court. She further alleged that she was "gaslit" when she attempted to correct Taleff's representation

---

[1] Morin also moved to vacate the scheduling order and hearing date in this matter, essentially arguing that the matter should be dismissed. She later raised these arguments in a petition for writ of supervisory control, which this Court denied. *Morin v. Commission on Practice*, No. OP 20-0007, Order (Mont. Jan. 6, 2020).

that her admonition was private.[2] Morin claimed that her attempts to expose the Commission's alleged misrepresentation of the nature of her admonition made it unreasonable to expect Taleff to remain neutral toward her. Morin further claimed that Taleff was biased against her because she had filed an affidavit as an expert witness in a prior matter in which she objected to Taleff suggesting that another attorney suffered from mental illness.[3] The Commission denied Morin's motion, concluding that Morin had indeed received a public admonition in the earlier matter in spite of her continued insistence, in the face of an indisputable record to the contrary, that the admonition had been private. The Commission concluded further that the affidavit Morin submitted in another attorney's disciplinary matter did not prove that Taleff was now biased against her. The Commission found no basis for Taleff to recuse himself from the present matter.

After hearing this disciplinary matter, the Commission made extensive, detailed findings regarding the circumstances by which Rowsey came to testify about Kasperick's alleged involvement, ultimately finding that Morin knew at the time she elicited Rowsey's testimony that her representation to Rowsey that Carey had consulted with Kasperick in this matter was misleading and false. The Commission found that Morin improperly had "[fed] a

---

[2] Morin has frequently described the actions of ODC and the Commission as attempts to "gaslight" her. "Gaslighting" is a form of manipulation that seeks to sow seeds of doubt in a targeted individual with the aim of making the individual question his or her own memory, perception, and sanity. The term comes from a 1944 movie by the same name, in which a husband tries to drive his wife insane by changing minor details about their house, including the brightness of the gas lights, and insisting that they have always been that way. Negar Katerai, *Retraumatized in Court*, 62 Ariz. L. Rev. 81, 110 n. 134 (2020), citing *Gaslight* (Metro-Goldwyn-Mayer 1944).

[3] Morin and Montana attorney Genet McCann were both subject to discipline for their actions involving the legal representation of an incapacitated person. Morin filed an affidavit in support of McCann, attesting that McCann was of sound mind with no mental issues, that Taleff had questioned McCann's mental soundness without basis, and that Morin believed Taleff's questioning of McCann's mental health was sexist. Notwithstanding Morin's affidavit, this Court accepted and adopted the Commission's recommendation, suspending McCann from the practice of law for a period of not less than seven months. *In the Matter of Genet McCann*, No. PR 17-0670, Order (Mont. June 5, 2018). Eight months later, we accepted the Commission's recommendation and suspended Morin for a period of not less than seven months for her conduct in the matter. *In the Matter of Tina L. Morin*, No. PR 17-0448, Order (Mont. Feb. 27, 2019), reh'g den. Mar. 26,

8

potential witness false information and then put [that witness] on the stand to solicit that false information." It found "self-serving and not credible" Morin's explanation that she had not done that.

The Commission found further that Morin "engaged in abusive, unprofessional, and uncivil conduct toward other counsel" and in "bullying and intimidating tactics that are unbecoming a Montana lawyer," with an intention "to harass, annoy, or gain leverage in the litigation." It found she made "numerous unprofessional, outrageous, profane, paranoid and unfounded allegations against Gangle, Carey and Moore." It provided excerpts from nine different letters or e-mails Morin sent to various individuals in which she made inflammatory statements, for example calling Gangle an "arrogant sexist man" with a "fragile ego" who "strut[s] around like some peacock in the barnyard, pissing on all the fence posts to make sure everyone believed you were the top dog" and "the definition of a shark and a slime that comes out from underneath the rocks."

Regarding the Labairs' costs, the Commission found Morin informed the Labairs about only approximately $36,000 in claimed costs prior to the final mediation, and the Labairs first learned Morin was claiming an additional $45,000 in costs when they received the disbursement statement. The Commission found no clear and convincing evidence that Morin had fabricated any costs. However, it found Morin failed in her obligation to inform the Labairs as to the costs incurred prior to the final mediation. The Commission further found that some of the costs Morin taxed to the Labairs were unreasonable, specifically for her use of a legal research consultant and the costs of a contract attorney who drafted appellate briefs, which it concluded should have come out of Morin's contingent fee. The Commission found that the Labairs did not consent to either of these expenses.

Based on these and other findings, the Commission concluded that Morin violated M. R. Pro. Cond. 3.3(a)(3), 3.4(b), 3.4(c), and 8.4(c) for misconduct regarding Rowsey's testimony about Kasperick. It further concluded that she violated M. R. Pro. Cond. 1.4(a)(1), 1.4(a)(4), and 1.4(b) by failing promptly to inform the Labairs about their incurred costs, and

2019.

9

M. R. Pro. Cond. 1.5(a) for unreasonably charging the Labairs with the costs of a legal research consultant and a brief writer. Finally, the Commission concluded that although ODC had proven its allegation regarding Morin's abusive, uncivil, and unprofessional conduct toward other attorneys, that such conduct was not a basis for discipline under M. R. Pro. Cond. 1.1, 1.3, and 3.1(a) as charged by ODC. Relying on *In re Best*, 2010 MT 59, 355 Mont. 365, 229 P.3d 1201, the Commission determined that it would exceed its authority if it charged Morin with violation of a rule other than that charged by ODC.

The Commission recommended Morin be disbarred from the practice of law and assessed the cost of these proceedings. The Commission found Morin's conduct, including her conduct during the disciplinary hearing, "serious and disturbing," and expressed its determination that allowing her to resume the practice of law would be detrimental to her clients and to the public. The Commission further stated that Morin's misconduct violated her duties to her clients, to the public, and to the legal profession.

The Commission also noted that Morin had not shown any contrition for her misconduct and that she remained defiant and unaccepting of responsibility. It added that in earlier disciplinary matters, Morin demonstrated a lack of contrition for her actions and that the Commission did not believe Morin's unacceptable behavior would be altered by any form of discipline less than disbarment.

The Commission considered Morin's conduct toward other counsel to be an aggravating factor in justifying the level of discipline imposed. It noted that her conduct extended over nearly a decade of litigation and was directed at several other attorneys. It stated, "Her conduct toward other counsel, while found to not be a violation of the MRPC as pleaded by ODC, is wholly outside the bounds of legitimate advocacy and represents what the attorney members of the Commission view as the worst, most vitriolic and outrageous communications they have seen."

The Commission further made note of Morin's prior disciplinary matters, one that resulted in a public admonition and one that resulted in a suspension of not less than seven

10

months.[4] The Commission found Morin's conduct regarding Rowsey's testimony to be similar to the conduct for which she was suspended from the practice of law—"a pattern of aggressively making unsupported claims and then engaging in sophistry to dodge the consequences." It stated further that it does not believe Morin understands or accepts her professional and ethical obligations as an attorney.

## RESOLUTION

Morin has filed objections to the Commission's Findings of Fact, Conclusions of Law and Recommendation. She argues this Court should not adopt the Commission's rulings because: the Commission is biased against her and its rulings are retaliatory; the Commission failed to cite to the record in its findings of fact and many of its findings are not substantiated by the record; the Commission failed to support its conclusions of law with citations to legal authority; the Commission erred in concluding that ODC met its burden of proving its allegations by clear and convincing evidence; and the Commission failed to properly apply contract law.

This Court reviews de novo the Commission's findings of fact, conclusions of law, and recommendations. *In re Neuhardt*, 2014 MT 88, ¶ 16, 374 Mont. 379, 321 P.3d 833 (citation omitted). This Court reviews matters of trial administration for abuse of discretion. *Blanton v. Dep't of Pub. HHS*, 2011 MT 110, ¶ 22, 360 Mont. 396, 255 P.3d 1229. Despite its duty to weigh the evidence, this Court "remain[s] reluctant to reverse the decision of the Commission when its findings rest on testimonial evidence. We recognize that the Commission stands in a better position to evaluate conflicting statements after observing the character of the witnesses and their statements." *In re Neuhardt*, ¶ 16 (quoting *In re Potts*, 2007 MT 81, ¶ 32, 336 Mont. 517, 158 P.3d 418).

We have thoroughly reviewed the record in this matter and we find Morin's objections without merit.

---

[4] *In the Matter of Tina L. Morin*, No. PR 17-0254, Order (Mont. Mar. 6, 2018), and *In the Matter of Tina L. Morin*, No. PR 17-0448, Order (Mont. Feb. 27, 2019), reh'g den. Mar. 26, 2019, respectively. Morin remains suspended from the practice of law at this time.

11

First, Morin argues this Court should reject the legitimacy of the Commission's rulings because it is biased and retaliating against her for "engaging in whistleblower activity" that exposed the Commission's alleged bias against female attorneys. According to Morin, ODC and the Commission have been and continue to be engaged in a concerted effort to discriminate against female attorneys and they have pursued the present disciplinary action against her because she exposed their conspiracy by filing an affidavit as an expert witness in a disciplinary matter involving another female attorney. She asserts that she has exposed the discriminatory actions of both ODC's counsel and Taleff and she therefore objects to their involvement in this case.

As evidence of Taleff's alleged discriminatory conduct, Morin asserts that he misrepresented to this Court and to a federal district court that she had been subject to a public admonition by the Commission when in fact the admonition was private. Morin raised this assertion in a pre-hearing motion before the Commission, and the Commission found Morin's assertion that her admonition had been a private admonition to be factually incorrect, thus belying her argument that Taleff's alleged misrepresentation of such was evidence of discrimination or bias. Morin continues to assert, however, that Taleff's representation of her admonition as public is false and that this evidences the Commission's bias against her.

Whether Morin's admonition in the earlier disciplinary matter was public or private is a rather minor underlying concern, but it is illustrative of and consistent with Morin's behavior throughout this disciplinary matter. In *In the Matter of Tina L. Morin*, No. PR 17-0254, ODC filed a disciplinary complaint in which it alleged Morin violated three Rules of Professional Conduct by making false representations to a federal judge and by filing a document against the directive of that judge. Morin denied the allegations, and the matter proceeded to a disciplinary hearing. After hearing, the Commission issued Findings of Fact, Conclusions of Law, and Discipline in which it found Morin's explanation for her actions not credible and determined she should receive a public admonition. Morin then petitioned this Court for review of the Commission's decision, arguing that it should impose no discipline. In this filing, Morin acknowledged that the discipline recommended by the

12

Commission was a public admonition.

Upon review, this Court accepted and adopted the Commission's rulings, holding that Morin would receive a public admonition from the Commission. Soon after, the Commission set the time and place for the public admonition and issued an Order to appear, instructing Morin that she was required to be present for the public admonition.

The admonition was delivered as scheduled on April 19, 2018. When Commissioner Jean Faure imposed the admonition, however, it appears that she mistakenly referred to it as a private, rather than a public, admonition. On May 1, 2018, Taleff filed with this Court, and served upon Morin via her counsel, a Record of Imposition of Discipline which indicated that the Commission had given a public admonition, orally delivered by Commissioner Faure, to Morin. Morin raised no objection, nor did she seek any clarification whether the admonition was public or private.

On June 13, 2019, ODC again brought the public nature of the admonition to Morin's attention via letter. In that letter, ODC advised Morin that it had learned that during her testimony before a panelist of the Ninth Circuit Court of Appeals regarding reciprocal discipline, Morin had represented she "agreed to a private admonition" in PR 17-0254. ODC reminded Morin she had not agreed to discipline: rather, the matter proceeded to a contested case hearing, followed by an Order from the Commission imposing a public admonition, followed by an Order of this Court that adopted the Commission's imposition of a public admonition. ODC further advised, "The admonition was imposed on April 19, 2018, wherein Commissioner Faure mistakenly advised you that it was private."

Morin provided this letter as an exhibit to her September 10, 2019 motion to vacate, describing it therein as "a letter from the ODC in which the ODC, in writing and publicly, acknowledges that Respondent received only a private admonition." Morin attached the same letter to her Petition for Writ of Supervisory Control, OP 20-0007, describing it as "ODC's Letter acknowledges Private Admonition." In her present objections, Morin again states, "ODC letter stating [sic] the admonition was indeed private." There is no basis in reality for Morin's insistence that the ODC letter—which specifically advises Morin that the

13

Commission, with the approval of this Court, imposed a public admonition upon her although a Commissioner mistakenly stated that it was a private admonition—constitutes an acknowledgment that Morin received a private admonition. Morin's refusal to accept the rational explanation that the Commissioner misspoke when she called it a private admonition, when all other evidence, including Morin's own filings and this Court's Order, indicate that the admonition was public, defies all reason. Since Taleff did not misrepresent the nature of Morin's admonition, we are unpersuaded by her argument that his doing so is evidence of bias toward her.

Similarly, we are unpersuaded by Morin's accusation that Taleff is retaliating toward her because she filed an affidavit in a disciplinary matter for another attorney in which she accused Taleff of sexism. Morin provides no evidence beyond making the allegation that her affidavit must have provoked a retaliatory response.

Likewise, the only support Morin offers for her allegation of bias by ODC's counsel Jon Moog is that he prosecuted this matter, which Morin terms "baseless" and therefore she concludes must be motivated by bias against female attorneys.

This Court stands firm in its intolerance of discrimination. The record reveals none. It is fair to say that many, if not a majority of, the disciplinary cases the Court has seen from the Commission involve male attorneys. The discipline recommended has been based on the attorney's misconduct, and the discipline imposed has been commensurate with the nature of that conduct and the history of disciplinary action, regardless of the attorney's gender. Morin's accusations of bias against female attorneys are unsubstantiated and out of bounds.

Next, Morin argues that this Court should reject the Commission's findings of fact because the Commission fails to cite to the record in support of its findings. This argument has no merit. The Commission cites to the record throughout its findings and, having reviewed the record, we have found no substantial errors. Although Morin points to 20 findings with which she takes issue, our review of the record reveals that each is either indisputable or a reasonable inference reached by the Commission.

Third, Morin argues that this Court should reject the Commission's conclusions of law

because the Commission fails to cite to legal authority and because the conclusions of law are not supported by clear and convincing evidence. We also find these arguments meritless. As to the former, the Commission cites to the Montana Rules of Professional Conduct as well as to applicable case law in its conclusions. In a disciplinary matter, ODC has the burden to prove its allegations by clear and convincing evidence. Rule 22(B)–(C) of the Montana Rules for Lawyer Disciplinary Enforcement. That standard requires "that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue . . . be clearly established by a preponderance of the evidence or by a clear preponderance of proof." *Harding v. Savoy*, 2004 MT 280, ¶ 51, 323 Mont. 261, 100 P.3d 976 (citation omitted). Here, much of the evidence upon which the Commission relies is undisputed, and the remainder is a question of credibility for the factfinder—in this case the Commission—to resolve. *State v. Ahmed*, 278 Mont. 200, 212, 924 P.2d 679, 686 (1996) (Trier of fact determines the credibility of witnesses and the weight to be given to their testimony and determines which prevails if evidence conflicts.); *State v. Zimmerman*, 2018 MT 94, ¶ 20, 391 Mont. 210, 417 P.3d 289 (citation omitted) (This Court will not reweigh the evidence or the credibility of witnesses.). In our de novo review of the evidence in this matter, we conclude that ODC met its burden of proving by clear and convincing evidence that Morin elicited false testimony from Rowsey, that she failed to promptly communicate incurred costs to the Labairs, and that she unreasonably charged certain costs to the Labairs.

Finally, Morin argues that the Commission incorrectly disregarded contract law, making findings of fact and conclusions of law "without regard to the law of contracts or the contract that governed the parties." This argument appears to go to the issue whether Morin violated M. R. Pro. Cond. 1.5(a) when she charged the Labairs for the use of a legal research consultant and a brief writer. Morin maintains that the contract she had with the Labairs allowed her to "hire whomever she felt was needed for the case." She further maintains that appellate brief writers are "used all the time by Montana attorneys." Morin misses the point: ODC and the Commission did not take issue with her use of these services; they instead faulted her for passing the expense along to her clients as an added cost. As the Commission

15

pointed out, M. R. Pro. Cond. 1.5(c) prohibits including charges for electronic legal research unless the client has given informed consent. Here, the Labairs did not give such consent and yet Morin attempted to pass along these charges to her clients. Furthermore, Morin accepted this case on a contingent fee basis. Though free to hire an attorney to write the appellate briefs, she could not then charge this to the Labairs as an expense without their consent. As the Commission noted in its findings, Morin's fee agreement with the Labairs provided for neither of these expenses to be taxed to the Labairs.

For these reasons, we adopt the Commission's Findings of Fact and Conclusions of Law and hold that Morin violated M. R. Pro. Cond. 3.3(a)(3), 3.4(b), 3.4(c), and 8.4(c) by soliciting false testimony from a trial witness, M. R. Pro. Cond. 1.4(a)(1), 1.4(a)(4), and 1.4(b) by failing to promptly inform her clients about their incurred costs, and M. R. Pro. Cond. 1.5(a) by unreasonably charging certain costs to her clients.

As to the recommended discipline, we agree with the Commission's recommendation that Morin's conduct warrants disbarment. We share the Commission's concerns regarding Morin's conduct, both in this matter and as an overall pattern of conduct, her lack of contrition, and her unwillingness to accept responsibility for her actions. Although the Commission did not conclude that Morin's conduct toward other counsel was in and of itself a violation of the Rules as charged by the ODC, we agree that such conduct is an aggravating factor. We note that Morin perpetuated this conduct in the objections she filed with this Court, baselessly accusing Taleff of: acting as "a hearings officer enraged beyond the capacity for rational or logical thought," engaging in "gas lighting," indulging in "hysteria," exhibiting "unethical conduct," being "ignorant," and characterizing his work as Chairman as a "reign of terror." Morin's conduct is inconsistent with the effective practice of law and does not serve the public, her clients, the legal profession, or herself.

We find the Commission's rationale in recommending disbarment to comport with the seriousness of the misconduct in the present matter, in conjunction with Morin's record of previous disciplinary actions, her pattern of behavior, and her unwillingness to accept responsibility. As the Commission noted, discipline short of disbarment has been

16

unsuccessful in persuading Morin to abide by her professional and ethical obligations to the practice of law in Montana.

Based upon the foregoing,

IT IS HEREBY ORDERED:

1. The Commission's Findings of Fact, Conclusions of Law, and Recommendation are ACCEPTED and ADOPTED.

2. Tina L. Morin is hereby disbarred from the practice of law in Montana, effective thirty days from the date of this Order. Morin is directed to give notice of her disbarment to all clients she represents in pending matters, any co-counsel in pending matters, all opposing counsel and self-represented opposing parties in pending matters, and all courts in which she appears as counsel of record in pending matters, as required by Rule 30 of the Montana Rules for Lawyer Disciplinary Enforcement.

3. Tina L. Morin shall pay the costs of these proceedings, subject to the provisions of Rule 9(A)(8) of the Montana Rules for Lawyer Disciplinary Enforcement allowing her to file objections to the statement of costs.

The Clerk of this Court is directed to provide a copy of this Order of Discipline to Tina L. Morin and to Disciplinary Counsel, the Office Administrator for the Commission on Practice, the Clerks of all the District Courts of the State of Montana, each District Court Judge in the State of Montana, the Clerk of the Federal District Court for the District of Montana, the Clerk of the Circuit Court of Appeals of the Ninth Circuit, and the Executive Director of the State Bar of Montana.

DATED this 31 st day of March, 2020.

_____
Justice

We concur:

_____
Chief Justice

17



Justices

Justice Laurie McKinnon did not participate in the consideration of this Recommendation for Discipline.

18